The next case today is Jennifer Salmon v. Roger Lang et al., Appeal No. 21-1104. Attorney Salmon, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. May it please the Court. Joseph Salmon for the appellant, Plaintiff Jennifer Salmon. May it please Chief Judge Howard to reserve one minute for rebuttal? Yes. Thank you. There are several issues on appeal in this case. There are two primary issues, I believe, that are most important. One is the District Court's improper consideration of the Mount Healthy defense, and the second is the District Court's improper weighing of the evidence in favor of the moving party rather than the non-moving party. The first issue that I want to discuss is the grant of summary judgment in favor of the defendant, Superintendent Roger Lang, on the claim of the First Amendment violation. Under Civil Procedure Rule 56F, District Court may only grant summary judgment upon giving reasonable notice and an opportunity to respond to the non-moving party. That did not happen here with respect to Ms. Salmon and Dr. Lang's First Amendment claim. The First Amendment claim, as we know, is evaluated under the Mount Healthy burden-shifting framework. The District Court here found Ms. Salmon established sufficient causation evidence under the Mount Healthy standard as to the claim against Dr. Lang under the First Amendment claim against Dr. Lang. Under Mount Healthy, the burden of persuasion, not production, like Title VII, should have then shifted to the defendants. That did not happen here. Defendants concede in their brief on page 19 that they did not make the Mount Healthy argument. Had they made that argument in their summary judgment, the plaintiff would have had to respond and offered evidence to discredit the legitimate reason. But, unfortunately, we did not have notice and an opportunity to respond as we should have under subparagraph F under Rule 56. Now, this is not an issue of whether or not there was sufficient evidence in the record or whether the District Court can decide issues of law on its own, but one of notice. There may have been evidence in the record of qualified immunity or other issues of law, but there was no notice that those were issues of law. We raised this issue at page 28 of our principal brief and our reply brief of page 6. Now, I concede I didn't specifically cite subparagraph F of Rule 56, but I certainly argued about the failure of an opportunity to respond and a failure of notice very explicitly, and it's very clear that the District Court did not give notice and an opportunity to respond. They could have, if the District Court saw this as an issue, the District Court could have asked for further arguments. This was done by other courts. This court can look at South Boston Allied War Veterans Council at 875F891-913 at Note 7 where Judge Wolf raised the possibility of the Mount Healthy defense and the fact that if that defense was possible, further evidentiary proceedings would be required. That's a possibility when a court like this sees an argument that wasn't raised, but that wasn't done here. Seeing no arguments or questions from the court on this issue, I'll move to the second issue I see. The District Court here did not view the evidence in the light most favorable to the non-moving court, and there are several key examples here. The key event here in this case happened on November 22nd, as the facts here, where Ms. Salmon and the union organizer went down to the main office at the elementary school and asked for a meeting with Ms. Tobin, the principal. Their defendants claimed they demanded a meeting at the time. We claim that they asked to schedule a meeting. We believe in the record that's a dispute of fact. The District Court found, as a matter of fact, that they asked for a meeting at the time. There's evidence in the record for both views of the evidence. The District Court found, as a matter of fact, that they demanded a meeting at the time. That's a material fact, because Ms. Salmon was disciplined for demanding a meeting. She was disciplined for insubordination. Under Title VII, discipline might not be an adverse action, but this is a First Amendment case. Any action that might deter a reasonably hardy person from taking further First Amendment action is an adverse action. Discipline, a written warning of discipline, certainly would dissuade a reasonably hardy person like Ms. Salmon from continuing First Amendment action. This certainly would have dissuaded her. There's evidence in the record that Ms. Tobin was not planning to have a meeting at this time. The District Court found, as a matter of fact, that Ms. Tobin had planned to have a meeting with Ms. Salmon at the time. At Appendix 759, there's evidence in the record that a reasonable jury could conclude that there was no plan at the time for Ms. Tobin to have a meeting with Ms. Salmon at the time. That goes to, obviously, Ms. Tobin's motive and intent. What about the violation of student confidentiality? Thank you, Judge Barron. There's also evidence in the record that while certainly a reasonable jury could conclude, I don't concede that it's clear cut, a reasonable jury could conclude that she did violate student confidentiality. There's evidence in the record at Appendix 758 that a person in Ms. Salmon's position who worked with the student in question, this is a first grade student, it's at Appendix 757, it's admitted that she worked with the student in question, and Appendix 758, it was admitted by the defendants that a Harrington teacher may access information of students in their classroom and any Harrington service provider or staff working with that student. That was admitted fact in the Summary Judgment Record. Maybe I'm missing something about the mental health. For purposes of the question, it's not whether the belief as to why they took the action that they did is correct, right? I think you have to show that that is not why they acted. Not that the facts suggest that they shouldn't have acted that way, because it's about their motive in acting. So how does it help you? Typically, when you're trying to demonstrate that that's not the real reason somebody did something, it's not enough to simply say, well, the record shows that they shouldn't have acted the way they did. The question is, is that why they acted? And if you can show that it's just completely implausible that that's why they acted, that they acted the way they said they did for that reason, that's one thing. But you don't seem to be suggesting that. Well, what I'm suggesting is that this goes to the question of whether there is a discriminatory or retaliatory motive. And there are several issues here as to whether or not she could have properly been disciplined for accessing this student confidentiality. One is that she accessed this binder like a week before she was this encounter and they knew about it. And they knew about it, but they didn't do anything about it. The binder was on top of a cabinet in front of everybody in the main office that everybody went through to put incident reports in. So everybody saw other incidents reports in. So it wasn't concealed or anything. It was out in the hallway, but it was in the main office in front of that everybody had access to to put other incidents binders in. So it wasn't locked up in a cabinet. She, you know, as I already put it in the record, that other people admitted, you know, the question is, was this the real motive? And the evidence that this wasn't the real motive was that they knew this for a week. They only disciplined her after she made she engaged in the union activity on November 22nd. So that's the evidence to discredit when the discipline happened after her protected activity. It was two weeks afterwards. Well, I mean, let's put it this way. The protected activity was November 22nd. She was let out the school by police officer that same day and suspended that same day. So the suspension and police escort was that same day. The official written warning was after the investigation. So it was the investigation happened that same day and the written warning came after the investigation. So it was all a series of events. Is it correct that the investigation determined that her access to this folder was improper? That's what we that's what the investigation concluded. I mean, we think we contend evidence in the record that the investigation was biased. It was done by the Labor Council. They solicited only documents from the principal, not from Miss Salmon. They ignored evidence in the record supporting Miss Salmon. Some other teachers that said, yes, we accessed. We know some of the teachers said they accessed. We looked at the records in the incident finder. Some said they didn't. But if the record indicates that the discipline, the person who imposed discipline did so because that's what the investigation showed. And what what is the relevance that you can later poke holes in the investigation? The issue is, why did that person do something? Not whether you do that or someone else would do it. But why did they do it? I understand. But if you can show that the investigation is biased and they're feeding information to the investigators to make it biased. That's relevant to show that they're trying to make an outcome to make an outcome determinative, an outcome that they want to make. There is evidence in the record. And this is why the issue of the subject matter privilege is is is relevant as well, because, you know, they produced an investigation report with attorney client privilege. The district court waived the granted our motion to waive the privilege, but only for the specific e-mails that were attached to the investigation report, but not others. And did not allow us to to pose the investigator, even though that was all part of the communication. Under 702A subject matter privilege, the case law shows that if there's an intentional privilege, which there was here because they knew about it and we asked questions of the deponents after after they produced the record, there was no objection. These e-mails that were requested and the deponent were on the same subject matter. We weren't going to ask any questions about except on the investigation. And in fairness, because they're they asked, they used these e-mails. The e-mail showed communications between the attorney and the investigator. So, Mr. Solomon, I don't mean to cut you off. We do have these points in your brief. So you're not waiving anything here. But I'm going to stop you now so that we can hear from Ms. Gill. If you would. I had one question. Certainly. And I'm just trying to understand how you want us to be evaluating your appeal. There's a large number of different incidents. Taken that you say were adverse and the types of things that would be retaliatory actions. Are you making a cumulative claim or do you want us to look at each discrete one of those incidents as tied to a particular defendant and evaluate whether that particular incident alone is an adverse enough employment action to trigger the Mount Healthy inquiry? I couldn't quite tell what you want us to do in evaluating what the district court did. With regard to Ms. Tobin, it's a cumulative, certainly a cumulative, because we alleged sort of a hostile work environment injury, which is not a claim as much as an injury. And for purposes of that, how much of what is mentioned is attributable to Tobin? Every action is on Tobin? No, certainly not. I think I don't have the brief, but there's a series of actions. There's the October 13th yelling incident where she berated our client for helping out. You're not saying that alone is enough? Oh, no. But it's a cumulative that that posting telling us to stop helping. It's listed in our brief. For Judge Lang, sorry, Dr. Lang, he's not a judge, Dr. Superintendent Lang. You know, it's in the record and not disputed that he ordered a police escort, a police officer detective to escort Ms. Salmon out of the school. We believe that alone is an adverse action under the First Amendment. Thank you, Your Honor. Thank you, counsel. Ms. Gill. Yes, thank you, Your Honors. May it please the court. I'm Alexandra Gill, and I represent the defendant appellees in this matter. Roger Lang, John Moses, Jason Fredette, Kurt McPhee, Chelmsford School Committee, Patricia Tobin and Town of Chelmsford. And I'd like to start off by there's a number of issues being raised on appeal. But I'd like to start off with the the argument that the Mount Healthy defense was improperly applied or or otherwise waived. And in order to do that, I want to first say that the court can enter summary judgment as to whether speech was a motivating or substantial factor. If the record compels the conclusion that the plaintiff would have suffered the same adverse employment action in any event for nondiscriminatory reasons. And one of the key cases that Judge Stearns cited to below is McCarthy v. City of Newburyport. That's a case that has relatively similar facts as as alleged in this case. We have an employee police officer who was suspended for his from his job because he provided information that was critical of the police department. But the court, the First Circuit in that case, affirmed summary judgment because the employee was found to have used a key in violation of a policy. He had tossed a loaded weapon onto his boss's desk. And there were other reasons for a mayor's denial of his promotion based on completely independent reasons. And in this case, that's exactly what you have here. And I want to submit to you a hypothetical of sorts where because a lot of times First Amendment protected conduct is conducted in the presence of a potentially charged atmosphere. A lot of times those things happen simultaneously. So if you picture a person requesting a disability accommodation, for instance, at their let's say they're at a school and they're talking to their HR person at the school requesting such an accommodation and they become aggressive and start swearing at the HR person and make a huge scene. You have to separate that person's bad acts separate from the protected conduct. So even though there's temporal proximity, there's very much little relation between the two. I also want to address my brother's comment that the defendant appellees waived their Mount Healthy defense. And I would submit to you that that's absolutely not the case. In fact, it's been argued all along. There is plenty of evidence in the record. The case the appellate sides to is Dilamada v. PR Highway, which is a very specific case. The facts given in that case by the attorneys before the court were so sparse and the defendants were found to have summarily concluded the defense instead of providing a factual basis for it. So in this case, there's so many reasons in which you can argue that we've made we've made that defense in. First of all, that case, Dilamada was not vetted by the circuit court, but it's so distinguishable here because the defendants provided a huge target for Salmon to oppose in this case. In the motion for summary judgment in the lower court, there was. The whole crux of the argument was that it was the improper accessing of confidential student information and the insubordination itself that led to the disciplinary disciplinary action, not the union advocacy. So it's that that the discipline followed in investigation, which naturally flowed from the November 22nd, 22nd, 2017 incident is is the crux of our entire defense. And with respect to Tobin, there's and there's a lot going on in the case. So if I if you don't understand the record the way I'm describing it, just tell me. But as best I could tell, there's at least three incidences that are identified incidents that are identified where Tobin is alleged to have taken some action that was adverse to the plaintiff. That's part of the cumulative hostile workplace environment, grounding for the predicate for the amount for the First Amendment violation. But at least three of them, I don't see the defendant. Offering a neutral justification for the action. And the three I have in mind is posting the email behind the desk, asking teachers to ask if Salmon was in the classroom. And if she was volunteering her time to support teachers and staff, which led to her allegedly being ostracized. Teachers being outside the room and then. The teachers meeting in January where they're telling staff that there was a right way and a wrong way to raise concerns, and that led to her being ostracized. Those are three of the incidents that are a piece of the hostile work environment. I don't see the defense, doesn't mean there's no defense. I don't see the defense taking the form of it was a legitimate, non retaliatory reason for those actions. Am I right in reading it that way? I think the defense is that, well, with respect to the third one, you mentioned where defendant Tobin says there's a right way and a wrong way to go about things. That is essentially this case. I mean, we are dealing with someone who's poor judgment. You know, our position is that her poor judgment led her to this, not her union advocacy. But the standard for a hostile work environment. The standard for a hostile work environment, even under the less stringent standard in a First Amendment retaliation case, is not met here. And is that the sole defense you're making with respect to those portions of the hostile work environment claim, which is that it wasn't met, rather than that, even if it was met, it was a legitimate reason for the. And you didn't I think with respect to the October 13th phone call where there where there was an allegation that defendant Tobin yelled at Salmon and it was retaliatory in that sense. I think the record speaks for itself that this happened long before any of the issues with respect to the union advocacy on behalf of that first grade student came to a head in November. That phone call was in October, October 13th, I believe. And these union advocacy issues came, they reared their head in November, late November. November 20th is when those e-mails really started. So I would say that there's no evidence that was any that there was any retaliatory motive in that sense. And I would just direct your honor's attention to the case McKee versus Hart. We get that case just so I can put out this line of questioning with respect to the posting of the e-mail. The defense you're raising is not that there was some legitimate reason for it. It's a different kind of defense. Correct. With respect to the e-mail, your honor, that e-mail did not it was not written about Salmon. It was not written by Salmon. It was actually very complimentary of Salmon. It was meant to attack Tobin. So the I think Salmon's analysis that this was in some way retaliatory when Tobin's own testimony at deposition says she posted it in a private side area of her office for her to think about is too far a stretch. It's not even it doesn't even say one disparaging thing about Salmon. Nor is there any evidence in the record that anybody else saw it. Ms. Gill, do you believe that Morrell's holding on the effect of federal rule 15C1A is limited to diversity cases? Yes, I do, your honor. I do agree with Judge Stern's analysis with that with respect to that. Mr. Scrum. I think that judge in that in that instance, you have the. You have the argument that there's a federal procedural rule that should be superseded by a state. Procedural rule, and that's not the case here. I think the analysis Judge Stern's mentions in his decision on the motion for reconsideration is is spot on. But your honors, I would like to draw your attention to the. The crux of the defense argument, which is, again, the substantial motivating factor. No one criticized Salmon for her union advocacy in this case. No one criticized her tenacity with respect to these issues. She's never once alleged that these concerns expressed by her were minimized or dismissed. Her heating issues that she brought up. Nobody said you're asking for too many meetings. The record reflects that school administrators responded to these concerns and address the issues as she brought them up and responded to her concerns about the student appropriately. Tobin met with her. It's just she she wasn't able to meet with her that day. The short day right before Thanksgiving, where she had told them many times, at least two times via email. I'm not able to meet another. The special education director had indicated to her that not only was she not able to meet, but that the purpose of the meeting was improper, saying that it was related to a student specific matter. And therefore, it was not something that was within the purview of the union. If she if Salmon wanted to invite the teacher to a meeting or if the teacher wanted to bring Salmon with her to a meeting to discuss those issues, then that would be welcomed. And. The evening before, Salmon had shot back several emails, beginning with I think the last one was actually around 830. And it was essentially it was essentially a bit of a veiled threat saying we are requesting one last time to meet. We will be greatly disappointed if you are unable to fulfill your professional obligations. Eric, this is Blanchette. Council, why don't you take 30 seconds and wrap up? Eric Blanchette would be there at 8 a.m. tomorrow morning. We look forward to hearing your response then. So, even then at and I'm sorry, that wasn't 8 p.m. It was 433 p.m. Even then, after having been told twice that there was no meeting, there would be no meeting, then she's still insisting and telling them she's coming in tomorrow morning at eight, no matter what, to wait for a response. And I would just take issue at my last point with the fact that my brother claimed that there was any any allegation that. Sorry, I just lost my. Case that it was. Ignored that other teachers access the binder, the confidential student information binder. This was an investigative report. There was no bias shown whatsoever, and it all of the findings within it. The multiple warnings salmon had received about accessing the information and about insubordination with respect to the meeting are really clearly outlined and provide an ample legitimate independent basis. Thank you. Thank you. If you would mute Mr. Selman, you reserved a minute. I'd like to respond to my my sister's argument about the not healthy defense, regardless of what evidence the defendants put in the record at summary judgment. They argued only about the plaintiff's burden on page three of the summary judgment brief. I apologize. I don't have the appendix site. They argued. I'm sorry. Actually, page four of the brief, they argued to prevail on a section 1983 claim alleging violation of the First Amendment. Plaintiff must establish that his protected speech was substantial, a motivating factor in his public in his public employers, adverse employment actions. Were there no facts to support this required element of proof? It may be decided as a matter of law. In the next paragraph states in determining whether a causal connection exists between the plaintiff's exercise of his constitutional rights and the adverse action court. Look at several factors, including the temporal proximity between the protected activity and the alleged retaliatory act. Then they went on to explore the facts. There is no mention of a defense. So this is where we claim error. I understand that what's in the record. But there's also stuff in the record regarding qualified immunity and other issues that were not argued and would have been improper for the court to examine and rules to respond to. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Solman and Attorney Gill, you should disconnect from the hearing at this time.